# In the United States Court of Federal Claims

No. 21-840T
Filed: August 9, 2021
**TO BE PUBLISHED**

**FRANK T. LEIGHTON,**
*as personal representative of*
**ESTATE OF DAVID T. LEIGHTON,**

    *Plaintiff,*

**v.**

**THE UNITED STATES,**

    *Defendant.*

*Stephanie Loomis-Price*, Winstead, PC, Houston, Texas, for Plaintiff.

*Patrick Phippen*, Trial Attorney, *G. Robson Stewart*, Assistant Chief, *David I. Pincus*, Chief, U.S. Department of Justice – Tax Division, Court of Federal Claims Section, *David A. Hubbert*, Acting Assistant Attorney General, Washington D.C., for Defendant.

## MEMORANDUM OPINION AND ORDER

**TAPP, Judge.**

    In this tax case, the Executor-Plaintiff, Frank "Tom" Leighton (the "Executor"), seeks to recover a penalty the Internal Revenue Service ("IRS") collected for failure to timely file an estate tax return and pay the resulting obligations. The belated filing and payment were based on tax information unknown by the Executor at the time the return was due. The issue before the Court is whether that missing information could constitute reasonable cause for delay, thereby entitling the Executor to relief from that penalty.

    The United States moves to dismiss this action pursuant to RCFC 12(b)(6) for failure to state a claim upon which relief can be granted. (Def.'s Mot. to Dismiss ("Def.'s Mot."), ECF No. 16). The United States asserts that the Executor cannot establish reasonable cause based on the facts set forth in the Amended Complaint, (Am. Compl., ECF No. 13). The Court disagrees. Finding that the Complaint states a plausible claim upon which relief could be granted, the United States' Motion is **DENIED**.

I.       **Background**[1]

David Leighton passed away in January of 2017 leaving behind two sons—the Executor and David Leighton, Jr. (Am. Compl. at 2). The administration of the estate involved three key actors to which this opinion frequently refers—Freshwater Consultants of Alexandria, VA ("Freshwater"), JDJ Family Office Services ("JDJ Services"), and Richard Allen ("Mr. Allen"). (*Id.*). Prior to his death, the late Mr. David Leighton ("Decedent") utilized Freshwater for tax preparation services for several years. (*Id.* at 3–4). Subsequent to his death, Decedent's heirs contacted JDJ Services[2] to "learn of next steps that each needed to take in light of their father's death." (*Id*. at 2–3). The Executor then hired Mr. Allen, an attorney with Fraser & Allen, LLC, "to assist with administration of the Estate," and "authorized Mr. Allen to communicate with JDJ Services on [the Executor's] behalf." (*Id.*).

On March 23, 2017, Mr. Allen informed the Executor that an estate tax return needed to be filed *only* if the value of the Decedent's estate exceeded $5,490,000. (*Id.* at 3). Based on the readily available information, Mr. Allen, the Executor, and JDJ Services all operated under the assumption that the estate was worth approximately $1–2 million. (*Id.* at 4). Had that valuation been correct, an estate tax return was unnecessary. 26 U.S.C. § 2010. Freshwater worked in conjunction with JDJ Services and Mr. Allen to file the Decedent's 2016 individual income tax return, but the matter of possible lifetime gifts was apparently not discussed. (Am. Compl. at 4).

Per the Amended Complaint, the parties completed various steps in the fact-gathering process to effectively fulfill the estate's tax obligations.

> . . . As part of the fact-gathering process, a representative from JDJ Services on behalf of the Executor responded to a questionnaire that served as a primary information source for Mr. Allen's representation of the Executor. (Mr. Allen also conduc[t]ed further independent investigation for necessary information to administer the Estate, including, but not limited to, requesting all original estate planning documents from the attorneys who prepared them for the Decedent.) In response to the questionnaire's section on gifts, which asked for details of any gifts in excess of annual exclusion amounts and any United States Gift (and Generation-Skipping) Transfer Tax Return (Forms 709) previously filed, JDJ Services wrote, "We are coordinating with tax

---

[1] In considering the pending Motion to Dismiss, the Court assumes the facts alleged in Plaintiff's Amended Complaint to be true. (ECF No. 13). This summary of the facts does not constitute findings of fact but is simply a recitation of the allegations.

[2] JDJ Services, based in Boston, "manag[es] [its clients'] personal financial and administrative matters," including "wealth preservation and creation, generational planning, asset protection, tax and advisory, and lifestyle services," by "aggregating information from all other advisors, building collaboration between advisors, and maintaining a complete picture of a client's financial well-being." (Def.'s Mot. at 2 (citing *About Us*, JDJ FAMILY OFFICE SERVICES, https://www.jdjfos.com/about.php [https://perma.cc/WY7F-TQ8J])).

> preparer, Barbara Tymec/Freshwater Consultants in Alexandria, VA." . . . These efforts did not result in any indication of lifetime gifts by the Decedent. Rather, throughout the Estate's administration until the very last stages, specifically final funding from the Estate to its beneficiaries, Mr. Allen's communications with JDJ Services and Freshwater merely confirmed his initial understanding of the scope of Decedent's assets during life and at death.
>
> . . .[T]he Estate as they knew it did not exceed the exemption amount. And while JDJ Services and Mr. Allen worked with Freshwater throughout 2017 to ensure that Decedent's final income tax return was filed, Freshwater did not inform the Executor, Mr. Allen, or JDJ Services of any previously filed Forms 709. And although Freshwater did not prepare any subsequent tax returns for Executor or his estate, JDJ Services and Mr. Allen remained in communication with Freshwater during the Estate's administration as other tax needs arose. Freshwater was generally responsive, and none of the Executor, JDJ Services, or Mr. Allen had any reason to suspect that Freshwater had previously undisclosed information regarding Decedent's lifetime gifts or any other subject relevant to the Estate's administration.

(Am. Compl. at 3–4).

Throughout the above-recited process, David Leighton, Jr. had not been involved in the estate preparation and administration—for example, he had declined to serve as a co-executor. (*Id.*). On February 26, 2019, almost two years after his father's death, David Leighton, Jr., indicated that the Decedent "might have" established and funded various trusts during his lifetime, and an estate tax return may have been necessary. (*Id.* at 5). Mr. Allen inquired about those trusts with Freshwater, to which Freshwater responded with a copy of the Decedent's 2012 gift tax form confirming the existence of lifetime gifts. (*Id.*). This was new information to the Executor, Mr. Allen, and JDJ Services. That form illuminated leeward gifts totaling $5,094,000—an amount that would put the value of the estate over the threshold for an estate tax return. (*Id.*). Under 26 U.S.C. § 6075(a), that return was due within nine months of the Decedent's death, i.e., not later than October 6, 2017—a deadline long passed.

On April 9, 2019, after coordinating with JDJ Services, Freshwater, and the Executor, Mr. Allen prepared and filed the Decedent's belated estate tax return. (Am. Compl. at 5). The estate paid $1,626,928.00, an amount representing tax and estimated penalties and interest at that time. (*Id.*). After processing the return, the IRS assessed the following obligations: estate tax liability of $1,145,387.00, a late-filing penalty of $257,712.07, a late-payment penalty of $85,904.02, and interest totaling $87,858.88. (Def.'s Mot., App. 2). The IRS refunded the resulting overpayment of $50,066.03 on May 21, 2019. (Def.'s Mot., App. 3).

The Executor subsequently filed a refund claim with the IRS, insisting that it was improper to impose penalties resulting from the untimely filing of the estate tax return because he reasonably relied on Mr. Allen's advice and that all parties were unaware of the Decedent's lifetime gifts. (Am. Compl. at 3). After more than six months passed without the IRS acting on his refund claim, it was deemed denied on November 27, 2020. (*Id.* at 6; *see also* IRC §

3

6532(a)). The Executor initiated this action on February 2, 2021, (Compl., ECF No. 1), arguing that his failure to timely file the estate tax return was "due to reasonable cause and not due to willful neglect," thereby entitling him to a refund. (*Id.* at 5–6).

The United States moved to dismiss the Executor's original Complaint for purported failure to state a claim on April 5, 2021. (ECF No. 8). On April 26, 2021, that Complaint was amended as a matter of right pursuant to RCFC 15(a)(1). (Am. Compl.). The United States moved to withdraw[3] the first Motion to Dismiss Plaintiff's Original Complaint on May 5, 2021, (ECF No. 15), and filed the pending Motion to Dismiss Plaintiff's First Amended Complaint on the same grounds on May 10, 2021, (ECF No. 16).

## II.     Analysis

The United States moves to dismiss the claims before the Court pursuant to RCFC 12(b)(6). The Executor responds that the Amended Complaint sufficiently pleads the requisites for reasonable cause to justify the belated filing and payment. As explained in greater detail below, the Court agrees with the Executor.

### A.     *Jurisdiction and Standard of Review*

This Court possesses jurisdiction over claims for tax refunds when a plaintiff has "duly filed" a refund claim "according to the provisions of law in that regard, and the regulations of the [IRS] established in pursuance thereof[,]" I.R.C. § 7422(a), and has waited at least six months without a decision from the IRS, I.R.C. § 6532(a)(1). In this case, the Executor filed a refund claim with the IRS on May 27, 2020, more than six months prior to commencing this action on February 2, 2021. (Am. Compl. at 6; *see also* Compl., ECF No. 1). Since that time, the Executor's claim has lain dormant at the IRS. (Am. Compl. at 6). Accordingly, the Court has jurisdiction over this matter. *See* I.R.C. §§ 1346(a)(1) (predicating civil action for refund on full payment of disputed penalty); 7422 (requiring taxpayer to file claim for refund before filing civil action for refund); 6532 (prohibiting taxpayer from initiating civil action for refund under § 7422 sooner than 6 months after claim for refund is filed).

The United States' Motion is predicated on the assertion that, based on the pleadings, the Executor cannot establish reasonable cause for the belated filing. (Def.'s Mot. at 7–19). A motion to dismiss for "failure to state a claim upon which relief can be granted" is appropriate under RCFC 12(b)(6) only "when the facts asserted by the claimant do not entitle [it] to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). In considering a motion to dismiss for failure to state a claim, the Court "must accept as true all of the allegations in the [pleading]" and "must indulge all reasonable inferences in favor of the nonmovant." *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001).

For a claim to be properly stated, the pleading "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "[t]hreadbare recitals of the elements of a cause of action,

---

[3] As reflected in the conclusion of this Opinion, that Motion is granted.

supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[O]nly a [pleading] that states a plausible claim for relief survives a motion to dismiss." *Ashcroft*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. On such a motion, the plausibility standard does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence to support the plaintiff's allegations. *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337 (Fed. Cir. 2018).

Tax refund suits are *de novo* proceedings. *Hartman v. United States*, 99 Fed. Cl. 168, 179 (2011), *aff'd*, 694 F.3d 96 (Fed. Cir. 2012). Under I.R.C. § 7491(c), the United States has the initial burden of production with respect to penalty assessments. *Higbee v. Commissioner*, 116 T.C. 438, 446−47 (2001). The IRS may discharge this burden by showing that the tax return in question was filed after the due date. *Id.* In such actions, the Court generally presumes that the IRS assessment is correct, and it is the plaintiff's burden to rebut the presumption. *Id.* Once the burden is shifted, a taxpayer "bears the 'heavy burden' of proving its failure to file timely was due to reasonable cause." *Estate of Liftin*, 111 Fed. Cl. at 19 (quoting *Boyle*, 469 U.S. at 245). This Court has previously held that, at the motion to dismiss stage, if the taxpayer does not allege an absence of fault, or affirmatively alleges carelessness caused its failures, it cannot demonstrate reasonable cause and its claim must be dismissed. *See All Stacked Up Masonry, Inc. v. United States*, 150 Fed. Cl. 540, 547 (2020). To satisfy his burden, the Executor must allege both that he had "reasonable cause" for failing to comply with the tax obligations, and that those failures were not due to "willful neglect." *Estate of Liftin v. United States*, 110 Fed. Cl. 13, 19 (2013) (quoting *United States v. Boyle*, 469 U.S. 241, 245 (1985)).

### B.   Motion to Dismiss

The United States justifies its position with three arguments: (1) the advice the Executor received from Mr. Allen was objectively unreasonable; (2) the Executor is completely responsible for the failure to timely file the estate tax return; and (3) that the "unavailability" of the Decedent's 2012 Gift Tax Return is unreasonable. (Def.'s Mot. 10–19). The Executor argues to the contrary, stating that the facts in his pleadings establish reasonable cause, and that whether reasonable cause exists is a question of fact. (*See generally* Pl.'s Resp., ECF No. 17). This Court is not convinced by the United States' argument and finds that whether reasonable cause exists involves factual inquiry that cannot be resolved at this stage of litigation.

### i. Reasonable Cause

Before discussing whether the Executor's pleadings establish a viable claim, the Court will briefly discuss what constitutes "reasonable cause." I.R.C. § 6651(a) specifies that penalties shall not be imposed if the failure to timely file the return at issue is due to reasonable cause and not willful neglect. The implementing regulation provides: "If the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return [or pay the tax] within the prescribed time, then the delay is due to a reasonable cause." Treas. Reg. § 301.6651-1(c)(1).

"Reasonable cause" is interpreted to "make the absence of fault a prerequisite to avoidance of the [failure-to-file and failure-to-deposit] penalt[ies]." *Boyle*, 469 U.S. at 246 n.4.

5

Taken together with the requirement that the failure not be due to "willful neglect," the taxpayer seeking a refund must allege that its untimely filing or payment "was the result neither of carelessness, reckless indifference, nor intentional failure." *Id*. Essentially, a failure to file must have been "beyond the taxpayer's control" in order to avoid penalty. *Id*. at 248 n.6. "Reasonable cause" must be shown by demonstrating "the taxpayer exercised ordinary business care and prudence" but was nevertheless unable to file the return or pay the tax within the prescribed time. Treas. Reg. § 301.6651-1(c)(1). The taxpayer's claim must not be based on mere negligence, nor forgivable mistake, but must allege compliance was thwarted by events beyond the taxpayer's control. *All Stacked Up Masonry, Inc.*, 150 Fed. Cl. at 548.

Other provisions of IRS regulations state that "[t]he determination of whether a taxpayer acted with reasonable cause . . . is made on a case-by-case basis, taking into account all pertinent facts and circumstances." Treas. Reg. § 1.6664-4(b)(1). The regulations further state that "[c]ircumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer." *Id.* The regulations advise that "[r]eliance on an information return or on the advice of a professional tax advisor or an appraiser does not necessarily demonstrate reasonable cause and good faith[,]" unless, "under all the circumstances, such reliance was reasonable and the taxpayer acted in good faith." *Id.*

### ii. Adequate Pleading of Reasonable Cause

The Court must now decide if the Executor's pleading, when taken as true, could plausibly establish reasonable cause for the estate's belated tax filing. The United States argues that this belated filing was unreasonable at every turn—Mr. Allen's advice was unreasonable, Executor's reliance on the advice was unreasonable, and the unavailability of the tax information itself was unreasonable. (*See generally* Def.'s Mot.). Each of those arguments is based on the finding that someone, somewhere should have known about the 2012 gift tax form. As explained below, the Court is not able to make that decision at this nascent stage of litigation.

When evaluating whether reasonable cause exists, the Federal Circuit focuses its analysis of whether the advice was that of a competent and independent professional advisor on several factors. Those factors include: (1) whether "the advice was based on all pertinent facts and circumstances and the law as it relates to those facts and circumstances"; (2) whether the advice was based on any "unreasonable factual or legal assumptions," or "unreasonably [relied] on the representations, statements, findings, or agreements of the taxpayer or any other person"; and (3) whether the taxpayer's reliance on the advice was "objectively reasonable." *Stobie Creek Invs. LLC v. United States*, 608 F.3d 1366, 1381 (Fed. Cir. 2010). Whether these factors are present in each situation is a question of fact, but what elements must be present to constitute reasonable cause is a question of law. *Estate of Liftin*, 111 Fed. Cl. at 13 (citing 26 U.S.C.A. § 6651(a)(1)). Generally, a taxpayer may establish reasonable cause for failing to file a timely return to avoid penalty by establishing reasonable reliance on the advice of an accountant or attorney, even if it is later established that such advice was erroneous or mistaken. *Thomas v. Comm'r*, 82 T.C.M. (CCH) 449 (T.C. 2001), 2001 WL 919858 (citing 26 U.S.C. § 6651(a)(1)).

The United States argues that the advice that Executor received pertaining to whether he needed to file an estate tax return was objectively unreasonable. (Def.'s Mot. at 10). First, the

United States asserts that Mr. Allen's advice was not "based on all the pertinent facts and circumstances" because that advice did not account for the 2012 gifts made by the Decedent. (*Id.* at 11). This circular argument is unavailing. A finding for the United States on this point would also mean that missing information could never constitute reasonable cause because advice would necessarily *not* be based on all pertinent facts and circumstances. As such, this argument is not a valid reason for dismissal.

The United States goes on to argue that Mr. Allen's tax advice was unreasonable because his "blind faith in JDJ Services regarding the Decedent's lifetime gifts" does not constitute due diligence. (*Id.* at 11, 12). The Federal Circuit has found that a failure to perform due diligence amounts to unreasonable reliance on the statements of others. *Russian Recovery Fund Limited v. United States,* 851 F.3d 1253 (Fed. Cir. 2017). *Russian Recovery Fund* involved a situation where the plaintiff's outside accounting firm "did no independent investigation into the factual accuracy of the information that [a related individual] supplied." 851 F.3d at 1269. The facts differ from this case because, in *Russian Recovery Fund*, the taxpayer provided its tax preparation firm with a "self-interested" version of the relevant facts "orchestrated by [the taxpayer] to achieve a desired result and were not critically evaluated by [the tax preparer]." *Id.* (quoting *Russian Recovery Fund Ltd. v. United States*, 122 Fed. Cl. 600, 622 (2015)). In this situation, the Amended Complaint enumerates various steps taken in coordinating the estate, including an exchange of a questionnaire about the valuation of the estate. (Am. Compl. at 3–4). At this stage, the Court must accept as true that the steps outlined in the pleadings were taken to their most reasonable extent. Requiring a more detailed recount of those events runs counter to this Court's well-established pleading standards. Tax advisors cannot reasonably give advice on unavailable information. While the Court accepts as true that Mr. Allen's investigation did not reveal the existence of the 2012 trusts, without more evidence, the Court is unable to discern whether that factual investigation constituted reasonable due diligence.

The United States goes on to argue that, because Executor is the sole party responsible for the belated filings, he therefore cannot demonstrate reasonable reliance on the advice of his agent. (Def.'s Mot. at 14–15). Taxpayers are free to hire an agent of their choosing in the preparation of their taxes, but that does not relieve the taxpayer of its legal obligations under the tax code, and any carelessness, reckless indifference, or intentional failure by the taxpayer's agent or employee is attributable to the taxpayer. *See Boyle*, 469 U.S. at 250. Further, reliance on advisors is generally an insufficient excuse for relief from the late-filing and late-payment penalties because filing and payment deadlines are unambiguous. *Id.* at 249. The *Boyle* Court recognized other scenarios which could establish reasonable cause. For instance, the Supreme Court held that taxpayers may reasonably rely on advice concerning *whether*—but not *when*—a return must be filed. 469 U.S. at 250–51, s*ee also Carmean v. United States*, 4 Cl. Ct. 181, 185 (1983) ("[W]hen there is no question that a return must be filed, the taxpayer has a personal, non-delegable duty to file the return when due."). In the scenarios contemplated by *Boyle,* the Supreme Court does not address misapprehensions of fact or the responsibility of taxpayers in tendering relevant information to their tax advisors. The question that is left open is whether reasonable cause can be established when, as in this case, the taxpayer and its agents act on incorrect information.

A taxpayer has acted reasonably when they have "exercised ordinary business care and prudence . . .." I.R.M.[4] § 20.1.1.3.2.2.3. Ultimately it is the duty of a taxpayer to provide the information available to agents authorized in preparation of their taxes, thus the Court must examine whether the position taken by the taxpayer is reasonable. It is a pillar of the tax code that a taxpayer is expected to file a timely return based on the best information available and then file an amended return if necessary. *See Thomas*, 82 T.C.M. (CCH) 449. As a general rule, a taxpayer is not obliged to share details with a tax preparer that a reasonably prudent taxpayer would not know; neither is the taxpayer obligated to share details that he himself would neither know nor reasonably should know are relevant. *Pankratz v. Comm'r of Internal Revenue*, 121 T.C.M. (CCH) 1178 (T.C. 2021) (citing 26 C.F.R. § 1.6664-4(c)(1)(i)). In determining whether a taxpayer's behavior was reasonable, important considerations, however, include "[w]hy the records were unavailable and what steps were taken to secure the records," "[w]hen and how the taxpayer became aware that [it] did not have the necessary records," whether "other means were explored to secure needed information," whether "the taxpayer contacted the IRS for instructions on what to do about missing information," and the effort expended to obtain the missing information. I.R.M. § 20.1.1.3.2.2.3. The determination of whether a taxpayer acted with reasonable cause and in good faith is a factual issue. Treas. Reg. § 1.6664-4(b)(1). If a taxpayer fails to disclose a fact that it reasonably should know that would affect the tax treatment of an item, then the taxpayer cannot be considered to have relied in good faith upon the preparer's advice. *Neonatology Associates, P.A. v. C.I.R.*, 115 T.C. 43, Tax Ct. Rep. Dec. (RIA) 115.5, 2000 WL 1048512 (2000), *decision aff'd*, 299 F.3d 221, (3d Cir. 2002).

There is no dispute that the Decedent's lifetime gifts impacted whether an estate tax return was required and that Mr. Allen acted promptly once he obtained a copy of the 2012 gift tax return. Thus, the inquiry as to whether the Executor acted reasonably is largely dependent on the availability of the missing 2012 gift tax return. The United States argues that the 2012 gift tax return was in Freshwater's possession all along, thus it should have also been reasonably known by the Executor. This involves a factual inquiry beyond the record before the Court. The Amended Complaint alleges that the Executor made a diligent effort to identify lifetime gifts made by the Decedent, including making inquiries to Freshwater. What were the circumstances surrounding the gift tax form? Was it misfiled, intentionally hidden, willfully ignored? The Court is unclear at what point the availability of the document and exhaustive searching becomes enough to rise to the level of reasonable cause for a late filing. The specific details surrounding the inquiries to Freshwater are not pled before the Court, nor are they required at this stage. Whether those inquiries were actually diligent presents a question of fact not suitable at the dismissal stage. At this point, the Amended Complaint alleges sufficient facts to raise an expectation that discovery may reveal evidence to support the Executor's allegations.

---

[4] The Court acknowledges that the Internal Revenue Manual "does not have the force of law, is not binding on the IRS, and confers no rights on taxpayers." *Thompson v. Comm'r,* 140 T.C. 173, 193 n.19 (2013) (internal citations omitted). Consideration of the Manual is limited to persuasive, illustrative purposes.

The United States' arguments fail because each of them presupposes that one or more of the parties *should have known* that the estate's valuation went beyond the threshold for filing an estate tax form. The marrow of the Executor's case cannot be summarily described as "bad tax advice," but instead as advice without all pertinent information and based on a misapprehension of fact. Therefore, the United States' arguments can be affirmed or negated by answering a single question: should the Executor or his tax advisors have known about the Decedent's funded trusts prior to their unveiling in 2019? There is simply not enough information to answer that question. At the pleading stage, the Court must take the Executor's allegations as true and view them in the light most favorable to him. To the extent the United States dispute these allegations, that is a factual inquiry not suitable for resolution on a motion to dismiss.

### III. Conclusion

In this case, whether the Executor's belated filing satisfies the elements of reasonable cause relies on a heavily factual inquiry, which is inappropriate at this stage of litigation. Indulging all reasonable inferences in favor of the Executor, the Court finds that the taxpayer has pled sufficient factual allegations that, taken as true, establish a viable claim. Based on the foregoing, the Court hereby orders as follows:

(1) The United States' Motion to Withdraw its Motion to Dismiss predating the Amended Complaint (ECF No. 15), is **GRANTED**, therefore the original Motion to Dismiss, (ECF No. 12), will be terminated on the Court's docket.

(2) The United States' Motion to Dismiss pursuant to RCFC 12(b)(6) is **DENIED**.

The United States shall file its Answer to Leighton's First Amended Complaint within 30 days from the date of this order.

**IT IS SO ORDERED.**



s/ David A. Tapp
DAVID A. TAPP, Judge